Pearson, C. J.
 

 This suit is for the same land which was the subject of controversy in the case of
 
 Williams
 
 v.
 
 Council,
 
 decided at December Term, 1856, 4 Jones’ Rep., 206. But the facts now presented, are not the same. The deed of trust, executed by Tyson to Roberts, 9th February, 1841, was not then in evidence, and the Court is not now in possession of the fact, which was then in evidence, that Benjamin C. Williams had commenced an action of ejectment against William Watson, on 20th of June 1845, which pended until Spring Term-1853. So we have one fact added and one fact omitted.
 

 On the facts now submitted for our consideration, we are of opinion the plaintiff is entitled to recover.
 

 - A sale in a case of this kind by a decree of a court of equi
 
 *231
 
 ty is, in effect, a sale by the owner of the land, through the agency of the court;
 
 Smith
 
 v. Brittain, 3 Ired. Eq., 351.— So, our case is the same as if Benjamin "Williams had, in 1834, contracted to sell the land to Tyson, who entered under Williams, and held possession by virtue of the contract. Tyson’s possession, consequently, was not adverse at its commence-. ment, and the question is, did any thing take place afterwards to make it adverse.
 

 1. On the 9th of January, 1841, it is admitted Tyson was in possession, under the contract of sale. At that date he took a deed for the land, from Burroughs, who was not authorised to make it. So the title did not pass out of Williams, and the deed was but color of title. There certainly is no principle on which the fact of taking the deed could alter the character of Tyson’s possession. He had color of title, but his possession was not adverse.
 

 2. On the 9th of February, 1841, Tyson executed to Roberts a deed of trust, to secure the payment of certain creditors, but he continued in possession. There is no principle on which the fact of his making this deed of trust, could alter the character of his possession. Suppose the effect of this deed was to pass his color of title to Roberts, and as between them, to make him hold under Roberts, still he was not thereby relieved from his obligation to Williams, and having entered under him and held possession for him, there was nothing he could do, or say, so long as he continued the possession thus acquired, to make his possession adverse, without the concurrence of Williams, or some act done by Williams to put an end to the relation which existed between them. If he wished to assume an adversary position, he could only have effected it by surrendering back the possession. Our ordinary notion of fairness shows that this must be so. As against Roberts, Tyson was entitled to a resulting trust, after satisfying the debts secured in the deed of trust, and as against Williams he had an equity, on paying the purchase money, to call for the legal title, but, in the mean time, he was holding
 
 *232
 
 under and for Williams.
 
 Taylor
 
 v.
 
 Gooch,
 
 4 Jones, 436.
 

 4. In 1842, Tyson contracted with William Watson to sell the land for $3500, to be paid out of the trust estate of Watson’s wife, and when the purchase money was paid, he agreed to make the title to Cox, in trust for Mrs. Watson. “Watson, thereupon, entered into possession
 
 as the tenant of Tyson,
 
 and remained in possession until March, 1853, when he left without giving up the possession to any one.” Here then is Watson taking possession under Tyson, and holding as his tenant, and Tyson bound to hold for Williams; of course, Watson’s possession being the possession of Tyson, could not be adverse to Williams.
 

 So, upon the facts before us,
 
 there
 
 was no possession adverse to Williams, until after March, 1853. This action was commenced December, 1857 ; consequently, his title could not have been divested by the color of title in Tyson or Huberts, as there was only, at most, some five years adverse possession, and it is unnecessary to pursue the matter further.
 

 What would have been the result, had the fact that in 1845 Williams commenced an action of ejectment against Watson been put in evidence, we are not at liberty to say. Did he, thereby, put an end to the congeable relation previously existing between himself and Tyson and Watson, so as, by his own act, to make the possession adverse, as when a bailor makes a demand of the bailee, and the bailee refuses to give up the thing bailed ? or did the obligation imposed on Tyson and his tenant to hold possession for Williams, still continue? These are questions into which we will not enter.
 

 The record does not present this as a “ case agreed,”' so as to authorise this Court to give j udgment for the plaintiff.
 

 Per Curiam,
 

 Judgment reversed, and a
 
 venvre de novo.